## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ZEDD B. ROBBINS,                  :
                                  :
          Plaintiff              :      CIVIL NO. 3:12-CV-01999
                                  :
     vs.                          :      (Judge Conaboy)
                                  :
CAROLYN W. COLVIN, ACTING         :
COMMISSIONER OF SOCIAL            :
SECURITY,                         :
                                  :
          Defendant               :

## MEMORANDUM

## BACKGROUND

          The above-captioned action is one seeking review of a

decision of the Commissioner of Social Security ("Commissioner")

denying Plaintiff Zedd B. Robbins's claim for supplemental

security income benefits.

          Supplemental security income (SSI) is a federal income

supplement program funded by general tax revenues (not social

security taxes).  It is designed to help aged, blind or other

disabled individuals who have little or no income.

          Robbins protectively filed[1] his application for

supplemental security income benefits on January 19, 2007. Tr. 86,

134-140, 149 and 166.[2]  The application was initially denied by

_____

1.  Protective filing is a term for the first time an individual
contacts the Social Security Administration to file a claim for
benefits.  A protective filing date allows an individual to have
an earlier application date than the date the application is
actually signed.

2.  References to "Tr.__" are to pages of the administrative
record filed by the Defendant as part of the Answer on December
                                        (continued...)

the Bureau of Disability Determination[3] on July 2, 2007. Tr. 100-103. On August 1, 2007, Robbins requested a hearing before an administrative law judge. Tr. 86 and 105.  After over 15 months had passed, a hearing was held before an administrative law judge on November 20, 2008. Tr. 32-74.  On February 19, 2009, the administrative law judge issued a decision denying Robbins's application. Tr. 86-93.  On March 11, 2009, Robbins filed a request for review  with the Appeals Council of the Social Security Administration's  Office of Disability Adjudication and Review, and on April 16, 2009, the Appeals Council vacated the decision of the administrative law judge and remanded the case to him to hold a new hearing and address, inter alia, the issue of Robbins's maximum residual functional capacity. Tr. 117-120.  A second administrative hearing was held on February 15, 2011. Tr. 387-424 (Doc. 15). Robins was represented by counsel at the hearing. Id.  On April 5, 2011, the administrative law judge issued a decision denying Robbins's application. Tr. 16-28.  As will be explained in more detail infra, after considering the evidence submitted at the first administrative hearing including the testimony of Juanita Carl, Robbins's girlfriend, the medical

---

2.  (...continued)
6, 2012, as well as a supplemental record consisting of an administrative hearing transcript filed on April 17, 2013. Docs. 6 and 15.

3.  The Bureau of Disability Determination is an agency of the state which initially evaluates applications for supplemental security income benefits on behalf of the Social Security Administration. Tr. 100.

records, and the testimony of Robbins and a vocational expert at the second hearing, the administrative law judge found that Robbins could perform a limited range of light work.[4] Id.

---

4.   The terms sedentary, light, medium, heavy and very heavy work are defined in the regulations of the Social Security Administration as follows:

> (a) *Sedentary work*. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

> (b) *Light work*.  Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

> (c) *Medium work*.  Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can do sedentary and light work.

> (d) *Heavy work*.  Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work.

(continued...)

On May 18, 2011, Robbins filed a request for review with the Appeals Council and after over 15 months had passed the Appeals Council on August 30, 2012, concluded that there was no basis upon which to grant Robbins's request for review. Tr. 1-5 and 10-12.  Thus, the administrative law judge's decision stood as the final decision of the Commissioner.

Robbins then filed a complaint in this court on October 4, 2012.  Supporting and opposing briefs were submitted and the appeal[5] became ripe for disposition on May 13, 2013, when Robbins elected not to file a reply brief.[6]

Robins was born in the United States on September 13, 1961, and at all times relevant to this matter was considered a

_____

4.  (...continued)
> (e) *Very heavy work*.  Very heavy work involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more.  If someone can do very heavy work, we determine that he or she can also do heavy, medium, light and sedentary work.

2 C.F.R. § 416.967.

5.  Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal."  M.D.Pa. Local Rule 83.40.1.

6.  Robbins had also filed an application for disability insurance benefits on January 19, 2007.  However, at the first administrative hearing Robbins withdrew that application. The present appeal only relates to the Commissioner's denial of Robbins's application for supplemental security income benefits.

"younger individual"[7] whose age would not seriously impact his ability to adjust to other work. 20 C.F.R. § 416.963©. Tr. 127 and 134.

Robbins stated in documents filed with the Social Security Administration that he obtained a General Equivalency Diploma (GED) in 1994; and he can read, write, speak and understand the English language and perform basic mathematical functions such as counting change, handling a savings account and using a checkbook and money orders. Tr. 177, 182 and 188.  Robbins reported that while attending school he was in regular education classes and that after obtaining a GED, he did complete training in wildlife and forestry conservation in 1995. Tr. 182-183.

Robbins has a limited work and earnings history. Tr. Tr. 141. His employment history consists primarily of work as an assistant butcher and cashier. Tr. 64,179 and 416. A vocational expert identified the cashier position as Robbins's past relevant employment[8] and described it as unskilled, light work. Tr. 416.

---

7.  The Social Security regulations state that "[t]he term younger individual is used to denote an individual 18 through 49." 20 C.F.R., Part 404, Subpart P, Appendix 2, § 201(h)(1). At the time of the second administrative hearing and the decision of the administrative law judge, Robbins was 49 years old. Tr. 416.

8.  Past relevant employment in the present case means work performed by Robbins during the 15 years prior to the date his claim for disability was adjudicated by the Commissioner.  20 C.F.R. §§ 404.1560 and 404.1565. To be considered past relevant work, the work must also amount to substantial gainful activity. Pursuant to Federal Regulations a person's earnings have to rise

The records of the Social Security Administration reveal that Robbins had earnings in the years 1978 through 1980, 1984 through 1995, 1997, and 2001 through 2006. Tr. 141.  Robbins's annual earnings range from a low of $103.23 in 1997 to a high of $13,425.01 in 2005. Id.  Robbins's total earnings during those 22 years were $94,163.75. Id.  Robbins testified that he last worked full-time in October, 2006 as a cashier at a novelty and gift store. Tr. 41-43.  As a cashier he was responsible for checking people out at the register, filling racks after sales, and sweeping and mopping the floor. Id.  In a document filed with the Social Security Administration, Robbins stated that he stopped working full-time on October 20, 2006, because of pain. Tr. 178.

Robbins reported he lived alone and spent most days on his recliner reading, watching TV and listening to the radio. Tr. 46 and 52.  Although Robbins's girlfriend cooked and cleaned for him, Robbins had no problems with personal care, such as dressing and feeding himself, and he was also able to prepare simple meals, drive and occasionally shop with his girlfriend. Tr. 41, 55, 60 and 186.

In contrast to the fact that Robbins worked full-time up until late October, 2006, in his application for supplemental security income and in a document entitled "Disability Report -

---

8.  (...continued)
to a certain level to be considered substantial gainful activity.

Adult" Robbins claimed that he became disabled and unable to work on September 15, 1994. Tr. 134 and 178. Also, in other documents, primarily medical records, and the transcript of the first administrative hearing, it is revealed that he stated that he injured his back and neck in 2000 in a slip-and-fall accident. Tr. 38 and 299.  Robbins claimed that his disabling impairments were depression, chronic back pain, degenerative disc disease, muscle spasms, and a right arm injury. Tr. 178.

The alleged disability onset date of September 15, 1994, has no impact on Robbins's application for supplemental security income benefits because supplemental security income is a needs based program and benefits may not be paid for "any period that precedes the first month following the date on which an application is filed or, if later, the first month following the date all conditions for eligibility are met." <u>See</u> C.F.R. § 416.501.  As stated above Robbins's SSI application was filed on January 19, 2007. Consequently, Robbins is not eligible for SSI benefits for any period prior to February 1, 2007.

For the reasons set forth below we will affirm the decision of the Commissioner denying Robbins's application for supplemental security income benefits.

**<u>STANDARD OF REVIEW</u>**

When considering a social security appeal, we have plenary review of all legal issues decided by the Commissioner.

7

See <u>Poulos v. Commissioner of Social Security</u>, 474 F.3d 88, 91 (3d Cir. 2007); <u>Schaudeck v. Commissioner of Social Sec. Admin.</u>, 181 F.3d 429, 431 (3d Cir. 1999); <u>Krysztoforski v. Chater</u>, 55 F.3d 857, 858 (3d Cir. 1995).  However, our review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence."  <u>Id.</u>; <u>Brown v. Bowen</u>, 845 F.2d 1211, 1213 (3d Cir. 1988); <u>Mason v. Shalala</u>, 994 F.2d 1058, 1064 (3d Cir. 1993). Factual findings which are supported by substantial evidence must be upheld. 42 U.S.C. §405(g); <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 38 (3d Cir. 2001)("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981)("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence."); <u>Keefe v. Shalala</u>, 71 F.3d 1060, 1062 (2d Cir. 1995); <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001); <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988)(quoting <u>Consolidated Edison Co. v. N.L.R.B.</u>, 305 U.S. 197,

229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008);  Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown, 845 F.2d at 1213.  In an adequately developed factual record substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight."  Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971).  A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence.  Mason, 994 F.2d at 1064.  The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-707.  Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole.  Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

**SEQUENTIAL EVALUATION PROCESS**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process in evaluating supplemental security income claims.  <u>See</u> 20 C.F.R. § 416.920; <u>Poulos</u>, 474 F.3d at 91-92.  This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity,[9] (2) has an impairment

---

9.  If the claimant is engaging in substantial gainful activity, the claimant is not disabled and the sequential evaluation proceeds no further. Substantial gainful activity is work that "involves doing significant and productive physical or mental

(continued...)

that is severe or a combination of impairments that is severe,[10]
(3) has an impairment or combination of impairments that meets or
equals the requirements of a listed impairment,[11] (4) has the
residual functional capacity to return to his or her past work and
(5) if not, whether he or she can perform other work in the
national economy. Id. As part of step four the administrative law

---

9. (...continued)
duties" and "is done (or intended) for pay or profit." 20 C.F.R.
§ 416.910.

10. The determination of whether a claimant has any severe
impairments, at step two of the sequential evaluation process, is
a threshold test. 20 C.F.R. § 416.920(c). If a claimant has no
impairment or combination of impairments which significantly
limits the claimant's physical or mental abilities to perform
basic work activities, the claimant is "not disabled" and the
evaluation process ends at step two. Id. If a claimant has any
severe impairments, the evaluation process continues. 20 C.F.R.
§ 416.920(d)-(g). Furthermore, all medically determinable
impairments, severe and non-severe, are considered in the
subsequent steps of the sequential evaluation process. 20 C.F.R.
§§ 416.923 and 416.945(a)(2). An impairment significantly limits
a claimant's physical or mental abilities when its effect on the
claimant to perform basic work activities is more than slight or
minimal. Basic work activities include the ability to walk,
stand, sit, lift, carry, push, pull, reach, climb, crawl, and
handle. 20 C.F.R. § 416.945(b). An individual's basic mental or
non-exertional abilities include the ability to understand, carry
out and remember simple instructions, and respond appropriately
to supervision, coworkers and work pressures. 20 C.F.R. §
416.945(c).

11. If the claimant has an impairment or combination of
impairments that meets or equals a listed impairment, the
claimant is disabled. If the claimant does not have an impairment
or combination of impairments that meets or equals a listed
impairment, the sequential evaluation process proceeds to the
next step.

judge must determine the claimant's residual functional capacity. Id.[12]

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. See Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule. The residual functional capacity assessment must include a discussion of the individual's abilities. Id; 20 C.F.R. § 416.945; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

**MEDICAL RECORDS**

Before we address the administrative law judge's decision and the arguments of counsel, we will review some of Robbins's medical records.

The medical records do reveal that Robbins suffered from degenerative disc disease of the lumbar spine and received extensive care from chiropractors. Tr. 239-251, 285-286, 288-296, and 311-318[13]. From March of 2003, up until February 7, 2011,

---

12. If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

13. The majority of the chiropractic records are handwritten and only partially legible but reveal that Robbins received chiropractic adjustments to the spine, ultrasound therapy and ice
(continued...)

Robbins's  chiropractor was Robert A. Rodman, D.C.  Tr. 238-256
and 287-297. From February 9, 2011 to March 2, 2011, Robbins
received treatment from Ronald S. Hoch, D.C. Tr. 310-319.  A
chiropractor is not an acceptable medical source under the
regulations of the Social Security Administration for providing a
diagnostic assessment. 20 C.F.R. § 404.1513(d). However, a
chiropractor can provide an assessment of a patient's
musculoskeletal functional capabilities. Id.  In this case other
than on two occasions the treating chiropractic physicians only
provided conclusory opinions of disability and did not provide
detailed assessments of Robbins's work-related functional
abilities, such as his ability during an 8-hour workday to walk,
sit, stand, push, pull, lift and carry.  On October 8, 2004, the
chiropractor restricted Robbins to lifting, pushing or pulling
items that weighed less than 10 pounds. Tr. 253.  However, as
stated earlier in this memorandum Robbins was working as a cashier
at the light exertional level which is inconsistent with the
chiropractor's assessment. Tr. 253.  Furthermore, in that
statement limiting Robbins to lifting, pushing and pulling items
weighing less than 10 pounds, the chiropractor did not specify
that the limitation had lasted 12 continuous months or was

---

13.  (...continued)
treatments. Tr. 256.  He also was provided with herbal muscle
relaxers. Id.

expected to so last.[14]  After Robbins ceased working, the same chiropractor, Dr. Rodman, on November 15, 2006,  again limited Robbins to lifting, pushing or pulling items that weighed less than 10 pounds but did not specify the duration of the restriction. Tr. 254.

There is only one report of an MRI of Robbins's lumbar spine in the record. Tr. 251. That MRI was performed on November 11, 2004, again at a time when Robbins reportedly was working full-time as a cashier, and it reveals "[m]ild degenerative disc disease at L4-L5 and to a lesser degree L5-S1," "mild bulge of annulus at L4-L5" and "[n]o disc herniation or spinal stenosis."[15]

---

14.  As stated earlier in this memorandum to receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 432(d)(1)(A).

15.  The spine (vertebral column) from the head to the tailbone is divided into five regions: the cervical (consisting of 7 vertebrae, C1-C7 in descending order), the thoracic (12 vertebrae, T1-T12 in descending order), the lumbar (5 vertebrae, L1-L5 in descending order), the sacrum (5 fused vertebrae, S1-S5 in descending order) and the coccyx (4 fused vertebrae). Other than the first two vertebrae of the cervical spine (C1 and C2), the vertebrae of the cervical, thoracic and lumbar regions are similarly shaped.
    A vertebra consists of several elements, including  the vertebral body (which is the anterior portion of the vertebra), pedicles, laminae and the transverse processes.  The vertebral body is the largest part of the vertebra and is somewhat oval shaped. The endplates are the top and bottom portions of a vertebral body that come in direct contact with the intervertebral discs.
    The intervertebral discs (made of cartilage) are the cushions (shock absorbers) between the bony vertebral bodies that
                                                    (continued...)

Id.  A review of the administrative record did not reveal a report

an MRI of Robbins's cervical spine.

On October 18, 2006, Robbins had an appointment with

Chris O'Neil, D.O., regarding alleged back and neck pain. Tr. 237.

The results of a physical examination performed by Dr. O'Neil are

notable in that Robbins although having neck pain with palpation

he had good range of motion and although having low lumbar pain

---

15.  (...continued)
make up the spinal column. Each disc is made of a tough outer
layer and an inner core composed of a gelatin-like substance. The
outer layer of an intervertebral disc is called the annulus
fibrosus and the inner core the nucleus pulposus. Jill PG Urban
and Sally Roberts, Degeneration of the intervertebral disc,
PublicMedCentral,http://www.ncbi.nlm.nih.gov/pmc/articles/PMC1650
40/(Last accessed February 18, 2014); see also Herniated
Intervertebral Disc Disease, Columbia University Medical Center,
Department of Neurology, http://www.columbianeurosurgery.org/
conditions/herniated-intervertebral-disc-disease/ (Last accessed
February 18, 2014).
    Degenerative disc disease is the wear and tear and breakdown
of the intervertebral discs as a person grows older.  It is a
process that can result from the dehydration of the discs as well
as an injury to the spine. The breakdown of the intervertebral
discs can result in discs bulging, protruding or herniating as
well as the inner gelatin-like core of the disc extruding outside
the annulus fibrosus. These conditions sometimes obstruct the
openings (foramen) along the spine through which nerve roots
exit. This condition is known as neural foraminal stenosis. They
can also result in a narrowing of the spinal canal or spinal
stenosis. Such bulges, protrusions and herniations if they
contact nerve tissue can cause pain.
    Degenerative joint disease (or osteoarthritis) is a
breakdown of the cartilage between joints.  In the spine there
are facet joints which are in the back of the spine and act like
hinges. There are two superior (top) and two inferior (bottom)
portions to each facet joint called the superior and inferior
articular processes. These joints are covered with cartilage and
the wear and tear of these joint is known as facet arthropathy
(arthritis). This wear and tear of the facet joints result in
loss of cartilage and can cause pain.

with palpation he had a negative straight leg raise test.[16] Id.
Dr. O'Neil's diagnostic assessment was chronic neck pain and
degenerative joint disease and he prescribed the narcotic pain
medication Ultram, the anti-inflammatory agent prednisone and the
muscle relaxant Skelaxin. Tr. 236.  Similar physical examination
findings were made by Dr. O'Neil on December 4, 2006. Tr. 235. Dr.
O'Neil did not give an indication of Robbins's work-related
functional abilities.

On May 31, 2007, Robbins was examined by Maliyakkal
John, M.D., on behalf of the Bureau of Disability Determination.
Tr. 257-264.  Dr. John after conducting a clinical interview and
physical examination concluded that Robbins suffered from
degenerative disc disease and chronic back pain primarily located
in the neck which was secondary to the fall that he sustained in
2000. Id.  However, even in light of the diagnostic assessment Dr.
John found that Robbins had the functional ability to engage in a
limited range of light work. Tr. 261-262.  Dr. John specifically
found that Robbins could frequently lift and carry 20 pounds and
occasionally lift and carry 25 pounds.[17]  Tr. 261.  Dr. John

---

16.  The straight leg raise test is done to determine whether a
patient with low back pain has an underlying herniated disc.  The
patient, either lying or sitting with the knee straight, has his
or her leg lifted.  The test is positive if pain is produced
between 30 and 70 degrees. Niccola V. Hawkinson, DNP, RN, Testing
for Herniated Discs: Straight Leg Raise, SpineUniverse,
http://www.spineuniverse.com/experts/testing-herniated
-discs-straight-leg-raise (Last accessed February 24, 2014).

17.  "Frequently" in the form completed by Dr. John was defined
(continued...)

further found that Robbins could sit for up to 6 hours in an 8-hour workday; he could occasionally engage in postural activities such as bending, kneeling and stooping; and he had no other physical functional limitations such as limitations with respect to reaching, handling and fingering. Id.

On June 18, 2007, Anthony G. Zale, M.D., reviewed Robbins's medical records on behalf of the Bureau of Disability Determination and concluded that Robbins had the physical ability to engage in a limited range of light work. Tr. 265-271. Dr. Zale specifically indicated that Robbins could occasionally lift and/or carry 10 pounds and occasionally lift and/or carry 20 pounds; he could stand and/or walk about 6 hours in an 8-hour workday; he could sit about 6 hours in an 8-hour workday; he was unlimited with respect to pushing and pulling other than as shown for the poundage relating to lifting and carrying; he could occasionally engage in postural activities; and he had no manipulative, visual, communicative or environmental limitations. Id.

On July 2, 2007, John N. Grutkowski, Ph.D., a psychologist, reviewed Robbins's medical records on behalf of the

---

17.  (...continued)
as up to 2/3 of an 8-hour workday.  In order to carry something you have to be either standing or walking. Consequently, although Dr. John only noted that Robbins could stand and walk more than 2 hours but less than 6 without specifying how many hours, Dr. John's  assessment of Robbins's lifting/carrying abilities indicates that Robbins could stand or walk for up to 2/3 of an 8-hour workday or 5.33 hours.

Bureau of Disability determination and concluded that Robbins had

no medically determinable psychological impairments. Tr. 272.

On February 17, 2011, Robbins had an appointment with

Nichole L. Hossier, M.D., regarding back pain. Tr. 299-302. This

was also an initial appointment with Dr. Hossier to establish a

patient/physician relationship. Tr. 299. Robbins's former

physician was Dr. O'Neil and there apparently had been a change

with respect to Robbins's insurance coverage which required a

change in his primary care physician. Id.  At this appointment

when Dr. Hossier reviewed Robbins's systems,[18] Robbins had no

constitutional, respiratory, cardiovascular, gastrointestinal,

endocrine, neurological, skin, psychiatric, genitourinary or

lymphatic complaints. Tr. 299-300.  Furthermore, the results of a

physical examination performed by Dr. Hossier were essentially

normal, including with respect to Robbins's back and extremities

he had normal range of motion, a negative straight leg raising

test and normal deep tendon reflexes. Tr. 302.  The only adverse

finding was "[t]ender paralumbar muscles bilaterally." Tr. 302.

Dr. Hossier's diagnostic assessment was that Robbins suffered from

backache not otherwise specified and noted that Robbins "should

respond nicely to a light walking program and physical therapy"

---

18.  "The review of systems (or symptoms) is a list of questions,
arranged by organ system, designed to uncover dysfunction and
disease." A Practical Guide to Clinical Medicine, University of
California, School of Medicine, San Diego, http://meded.ucsd.edu/
clinicalmed/ros.htm (Last accessed February 24, 2014).

and that "[h]e also needs to lose weight." Id.  Dr. Hossier did
not specify any work-related functional limitations. Id.

The most recent chiropractic record that was before the
administrative law judge was dated February 24, 2011. Tr. 313.
That record does not set forth any work-related functional
abilities or limitations and merely notes mild to moderate
musculoskeletal conditions, i.e., muscles spasms, tenderness, and
decreased range of motion. Id.

After the administrative law judge issued his decision,
Robbins submitted additional medical evidence to the Appeals
Council. Tr. 320-386. Robbins admits in his brief that this
evidence relates to new physical conditions – cardiac and
endocrine disorders.[19] Doc. 12, Plaintiff's Brief, p. 7.  These
conditions were not raised at either the first or second
administrative hearing and there is no indication that he suffered
from them at or prior to the second administrative hearing.

**DISCUSSION**

The administrative law judge at step one of the
sequential evaluation process found that Robbins had not engaged
in substantial gainful work activity since January 19, 2007, the
application date. Tr. 19.

---

19.  On April 2, 2011, Robbins was admitted to the hospital after
having chest pressure after carrying a 50-pound salt block for 15
to 20 munutes. Tr. 359. He was diagnosed with acute myocardial
infarction not otherwise specified, type 2 diabetes, obesity and
hyperlipdemia. Tr. 357. Robbins was discharged from the hospital
on April 6, 2011. Id.

At step two of the sequential evaluation process, the administrative law judge found that Robbins had the following severe impairments: "chronic neck and back pain; degenerative disc disease of the lumbar spine; headaches; and obesity[.]" Id.  The administrative law judge also found that Robbins was diagnosed with depression but that it was a non-severe impairment. Tr. 20. In so finding, the administrative law judge gave Robbins the benefit of the doubt based on Robbins's testimony and did not accept Dr. Grutkoswki's opinion that Robbins had no medically determinable psychological impairment. Id. The administrative law judge further noted that although Robbins's depression was non-severe he included appropriate limitations (which we delineate below) in the residual functional capacity assessment. Id.

At step three of the sequential evaluation process the administrative law judge found that Robbins's impairments did not individually or in combination meet or equal a listed impairment. Tr. 20-21.  Robbins has not challenged the administrative law judge's step three analysis.

At step four of the sequential evaluation process the administrative law judge found that Robbins had the residual functional capacity to perform a limited range of unskilled, light work. Tr. 21.  The administration found that Robbins could perform light work that provided Robbins with a sit/stand option at will; Robbins had to avoid climbing ladders, scaffolds or ropes except on an emergent basis; Robbins could occasionally use ramps and

stairs; he could occasionally crouch and stoop; he could only kneel and crawl on an emergent basis; he could only bend to the floor on an occasional basis; he could not perform repetitive rotation, flexion or extension of the neck; he could perform lateral reaching frequently with the upper extremities; he could perform occasional overhead reaching; and he had no limitations with respect to handling, feeling, fingering, grasping, or gross or fine motor dexterous coordination activities. Id.  With respect to  Robbins's depression, as noted the ALJ limited Robbins to unskilled work but he also limited Robbins to work that involved a stable work environment not subject to any more than occasional changes in the work setting; work of a moderate production pace not high volume or high intensity pace; and work that was not team oriented. Id.  In setting Robbins's residual functional capacity, the administrative law judge relied on the opinions of the state agency consultants and the forms completed by them but also as noted above gave Robbins's the benefit of the doubt. Id.  The ALJ also rejected the conclusory disability opinions of Robbins's primary chiropractors, Dr. Rodman. Tr. 27.

In setting the residual functional capacity, the administrative law judge reviewed the medical records and considered several other items including the opinions of the state agency consultants and the opinions and records of the treating chiropractors. Tr. 22-25.  Also, in arriving at the residual functional capacity the administrative law judge found that

Robbins's statements about his functional limitations as well as his girlfriend's statements were not credible to the extent they were inconsistent with the above residual functional capacity. Tr. 23.

Based on the above residual functional capacity and the testimony of a vocational expert the ALJ found that Robbins could perform his past relevant employment as a cashier and did not proceed to step five of the sequential evaluation process. Tr. 28. Specifically, the ALJ stated a follows:

> The VE testified that there has been no change in the claimant's vocational profile since the initial hearing. Additionally, she testified that the claimant has past relevant work as a cashier, classified by the [Dictionary of Occupational Titles] as light exertional and unskilled work.  Further, she testified that given the above residual functional capacity a hypothetical individual such as the claimant would be able to perform the claimant's past relevant work as a cashier as it is generally performed as described in the DOT with 2,000 jobs in the Northeast Pennsylvania statistical area. [] In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as generally performed.

Tr. 28.  Because Robbins could perform his past relevant work as a cashier, the ALJ concluded that Robbins was not disabled as defined in the Social Security Act. Id.

The administrative record in this case is 424 pages in length, primarily consisting of medical and vocational records. The administrative law judge did an adequate job of reviewing Robbins's medical history and vocational background in his decision. Tr. 16-28. Furthermore, the brief submitted by the

Commissioner sufficiently reviews the medical and vocational evidence in this case. Doc. 16, Brief of Defendant.

Robbins basically argues that the administrative law judge failed to appropriately consider the medical evidence, particularly the records and opinions of the treating chiropractors.  He also argues that the ALJ inappropriately assessed his credibility.  We have thoroughly reviewed the record in this case and find no merit in Robbins's arguments.

The administrative law judge rejected the disability opinions of Dr. Rodman, the treating chiropractor.  The Court of Appeals for this circuit has set forth the standard for evaluating the opinion of a treating physician in Morales v. Apfel, 225 F.3d 310 (3d Cir. 2000).  The Court of Appeals stated in relevant part as follows:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." . . . The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled.  In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion.

Id. at 317-18 (internal citations omitted). The administrative law judge is required to evaluate every medical opinion received. 20 C.F.R. § 404.1527(d). In the present case, the administrative law

judge in his decision specifically addressed the opinions of the
treating chiropractors, including Dr. Rodman. Tr. 25-27.

The social security regulations specify that the opinion
of a treating physician may be accorded controlling weight only
when it is well-supported by medically acceptable clinical and
laboratory diagnostic techniques and is not inconsistent with
other substantial evidence in the case. 20 C.F.R. §
404.1527(d)(2); SSR 96-2p.  Likewise, an administrative law judge
is not obliged to accept the testimony of a claimant if it is not
supported by the medical evidence.  An impairment, whether
physical or mental, must be established by "medical evidence
consisting of signs, symptoms, and laboratory findings," and not
just by the claimant's subjective statements.  20 C.F.R. §
404.1508 (2007).  The administrative law judge appropriately
considered the contrary medical opinions of the state agency
physicians and psychologist and the objective medical evidence and
concluded that the disability opinion of Dr. Rodman was not
adequately supported by the objective medical evidence.

With respect to Robbins's argument that the
administrative law judge did not properly consider his
credibility, the administrative law judge was not required to
accept Robbins's claims regarding his physical or mental
limitations. See Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir.
1983)(providing that credibility determinations as to a claimant's
testimony regarding the claimant's limitations are for the

administrative law judge to make).  It is well-established that
"an [administrative law judge's] findings based on the credibility
of the applicant are to be accorded great weight and deference,
particularly since [the administrative law judge] is charged with
the duty of observing a witness's demeanor . . . ."  <u>Walters v.</u>
<u>Commissioner of Social Sec.</u>, 127 f.3d 525, 531 (6th Cir. 1997);
<u>see</u> <u>also</u> <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d
799, 801 (10th Cir. 1991)("We defer to the ALJ as trier of fact,
the individual optimally positioned to observe and assess the
witness credibility.").  Because the administrative law judge
observed and heard Robbins testify as well as Robbins's girlfriend
testify, the administrative law judge is the one best suited to
assess their credibility.

We are satisfied that the administrative law judge
appropriately took into account all of Robbins's limitations both
physical and mental in the residual functional capacity
assessment.

Finally, the evidence submitted by Robbins to the
Appeals Council after the ALJ's decision is not a basis to reverse
the ALJ's decision or remand for further proceedings. Evidence
submitted after the administrative law judge's decision cannot be
used to argue that the administrative law judge's decision is not
supported by substantial evidence.  <u>Matthews v. Apfel</u>, 239 F.3d
589, 594-595 (3d Cir. 2001).  The only purpose for which such
evidence can be considered is to determine whether it provides a

25

basis for remand under sentence 6 of section 405(g), 42 U.S.C.
Szubak v. Secretary of Health and Human Servs., 745 F.2d 831, 833
(3d Cir. 1984).  Under sentence 6 of section 405(g) the evidence
must be "new" and "material" and a claimant must show "good cause"
for not having incorporated the evidence into the administrative
record. Id. The Court of Appeals for the Third Circuit explained
that to be material "the new evidence [must] relate to the time
period for which benefits were denied, and that it not concern
evidence of a later-acquired disability or of the subsequent
deterioration of the previously non-disabling condition." Id.
The items submitted to the Appeals Council related to new
conditions and a time after the second administrative hearing and
after the ALJ issued his decision and, consequently, are not
material. Robbins has the option to file a new application for
supplemental security income benefits based on this alleged new
evidence.[20]

Our review of the administrative record reveals that the
decision of the Commissioner is supported by substantial evidence.
We will, therefore, pursuant to 42 U.S.C. § 405(g) affirm the

_____

20.  Supplemental security income is a needs based program and
eligibility for this benefits is not limited based on an
applicant's date last insured.

decision of the Commissioner.

      An appropriate order will be entered.


              <u>S/Richard P. Conaboy</u>
              RICHARD P. CONABOY
              United States District Judge


Dated: February 27, 2014